**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| **ON Q FINANCIAL, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:22-cv-01287-STA-jay** |
| | ) | |
| **STEPHANIE MICHELLE PEPPER,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

---

**DEFAULT JUDGMENT
ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

---

Before the Court is Plaintiff On Q Financial, Inc.'s Motion for Default Judgment (ECF No. 17). Defendant Stephanie Michelle Pepper has not responded to the allegations of Plaintiff's Verified Complaint or the Motion for Default Judgment. For the reasons set forth below, the Motion for Default Judgment is **GRANTED in part**.

## BACKGROUND

Plaintiff filed a Verified Complaint on December 30, 2022, seeking the equitable reformation of a deed of trust signed by Defendant Stephanie Michelle Pepper as attorney-in-fact for her husband Sean Lynn Pepper. The Verified Complaint names Mrs. Pepper as the only Defendant in this action and alleges that Mr. Pepper is now deceased. Plaintiff caused summons to issue as to Mrs. Pepper and filed proof of service (ECF No. 12) on March 8, 2023. According to the server's affidavit, Plaintiff served Mrs. Pepper on March 4, 2023. Rule 12(a)(1) gives a defendant 21 days to file an answer after being served with the complaint. Fed. R. Civ. P. 12(a)(1). When Mrs. Pepper did not answer or otherwise appear and respond to the allegations, Plaintiff

sought entry of default pursuant to Federal Rule of Civil Procedure 55(a).  On March 30, 2023, the Clerk of Court entered default against Mrs. Pepper.

Because Mrs. Pepper is now in default, the Court deems all of the factual allegations of the pleadings as true for purposes of Plaintiff's Motion for Default Judgment.  *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (citing *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 693 (1st Cir. 1993)).  The Verified Complaint alleges the following facts. Mrs. Pepper resides at 860 Oak Grove Church Road, Pocahontas, Tennessee 38061-5878.  Verif. Compl. ¶ 2.  According to a land record attached to the Verified Complaint, Mrs. Pepper and her husband Sean Lynn Pepper received title to certain real property located at this address by warranty deed dated July 1, 2021.  Verif. Compl., ex. 2 (ECF No. 1-2).  On July 2, 2021, Mrs. Pepper, as Attorney-in-Fact for Mr. Pepper, executed a deed of trust by which Mr. Pepper conveyed a fee simple interest in the property to a trustee for the benefit of Mortgage Electronic Registration Systems, Inc., as the nominee of Residential Acceptance Corporation.  Verif. Compl. ¶ 5.  The warranty deed was recorded with the Register of Hardeman County in Trust Deed Book 787, Page 592, on July 7, 2021.  *Id.*  On the same date, Mrs. Pepper, as Attorney-in-Fact for Mr. Pepper, executed a promissory note memorializing a debt of $174,419.00 Mr. Pepper agreed to repay Residential Acceptance Corporation. *Id.* ¶ 8.

Among the provisions of the deed of trust forth on pages 3 and 4 of the deed are general covenants and warranties pertaining to title to the property, including a warranty that Mr. Pepper held title to the property and that by the deed of trust, Mr. Pepper had the right to convey the property.  *Id.* ¶ 22.  Even though Mrs. Pepper executed the deed of trust as attorney-in-fact for Mr. Pepper, Mrs. Pepper did not independently execute the deed of trust in her individual capacity.  *Id.* ¶ 19.  The Verified Complaint alleges that if the deed of trust did not bind Mrs. Pepper's interest

2

in the property, the conveyance contained within the deed of trust would be less than 100% of fee simple title to the property, meaning Mr. Pepper did not have the right to convey the property as required by the terms of the deed of trust. *Id*. ¶ 23. Mr. Pepper passed away on July 14, 2021. *Id*. ¶ 16.

One or more events of default have now occurred with respect to both the note and the deed of trust, for example, payment defaults and defaults with respect to covenants and warranties of title. *Id*. ¶ 26. Plaintiff is now the owner and holder of the note, the payment of which is secured by the deed of trust. *Id*. ¶ 25. Plaintiff is also presently the actual beneficiary of the deed of trust. *Id*. In light of the default on the note, Plaintiff would like to pursue its rights through non-judicial foreclosure against the property pursuant to the power of sale contained in the deed of trust. *Id.* ¶ 27. However, because Mrs. Pepper did not sign the deed of trust in her individual capacity, Plaintiff alleges the trustee may not be able to convey good and marketable title to the property following a foreclosure sale. *Id*. If Plaintiff is unable to cause a non-judicial foreclosure with respect to the property, Plaintiff will be irreparably harmed. *Id*. ¶ 28.

From these premises, the Verified Complaint alleges three claims. First, Plaintiff asserts a *lis pendens* based on its claim to the title of the property and asks the Clerk to certify an abstract of the Verified Complaint "to place the world on notice of the pendency of this action." *Id.* ¶ 30.[1]

---

[1] A notice of a *lis pendens* is "recorded in the chain of title to real property, required or permitted in some jurisdictions to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." Black's Law Dictionary 942 (8th ed. 2004). Under Tenn. Code Ann.§ 20-3-101, litigants may fix a lien *lis pendens* on any interest in real property pending the outcome of litigation by filing a notice of a lien *lis pendens* in the register's office of the county in which the property is located. A *lis pendens* is "merely a procedural step by which a plaintiff provides constructive notice to third parties of his claim against the subject property." *Domus Dev. LLC v. Titan Dev. LLC*, 350 F. Supp. 3d 683, 687 (M.D. Tenn. 2018) (quoting *Oliver v. Upton*, No. 01A01-9705-CH-00197, 1998 WL 151388, at *5 (Tenn. Ct. App. Apr. 3, 1998)). The Clerk of Court issued an

Second, Plaintiff requests a declaration from the Court in Plaintiff's favor and against Mrs. Pepper that "Mrs. Pepper shall not be permitted to raise cause splitting as a defense in any subsequent action with respect to the Note and/or the Deed of Trust in the event that Q Financial, or any of its successors-in-interest, may seek damages with respect to such instruments." *Id*. ¶ 34.  Finally, Plaintiff seeks the reformation of the deed of trust due to a mutual mistake.  According to the Verified Complaint, "[t]he original lender with respect to the loan memorialized by the note and secured by the deed of trust and Mrs. Pepper intended that the deed of trust effect a conveyance of 100% of fee simple title to the property to the said lender's trustee, so as to perfect a security interest against the entirety to such title in favor of the original lender, for the original lender's benefit, and the benefit of the original lender's successors-in-interest . . . ." *Id*. ¶ 36.

## JURISDICTION

The Court has jurisdiction in this case under 28 U.S.C. § 1332(a) by virtue of the parties' diversity of citizenship and the amount in controversy.  Plaintiff is an Arizona corporation duly authorized to transact business in the State of Tennessee.  Mrs. Pepper is a citizen and resident of the State of Tennessee.  The Verified Complaint's allegations concerning the value of the real property described in the deed of trust shows that the amount in controversy exceeds $75,000.00.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 allows a plaintiff to obtain a default judgment against a defendant when the defendant has failed to answer the complaint against it or otherwise enter an

---

Abstract of Suit and Notice of *Lis Pendens* (ECF No. 8) on December 30, 2022.  Because the Court is rendering a final judgment of default in favor of Plaintiff, the Court releases the *lis pendens* below.

appearance to protect its rights.  Default judgments are disfavored, and there must be "strict compliance with the legal prerequisites establishing the court's power to render the judgment." *Walton v. Rogers*, 860 F.2d 1081 (6th Cir. 1988).  A default judgment "is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter Co. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983).  "A default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." 10A Wright & Miller, Fed. Practice & Proc. § 2681 (3d ed. 1998) (citing *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Rule 55 creates a two-step process for obtaining a default judgment.  First, the plaintiff must seek entry of default from the clerk of the court by showing through affidavit or otherwise that the defendant has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).  Once the plaintiff obtains an entry of default against the defendant, Rule 55(b) permits the district court, or the clerk of the court in cases where the plaintiff seeks damages in a sum certain, to enter default judgment against the party in default.  Fed. R. Civ. P. 55(b)(1) & (2).  Upon entry of default, the defaulting party "is deemed to have admitted all of the well pleaded allegations in the complaint, except those relating to damages." *Microsoft Corp. v. McGee,* 490 F. Supp. 2d 874, 878 (S.D. Ohio 2007) (citing *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 110–11 (6th Cir. 1995)); *see also* Fed.R.Civ.P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").  Even then, a district court may only grant a default judgment against the defaulting party if the court finds "a sufficient basis in the pleadings for the judgment . . . ." *New London Tobacco Market, Inc. v. Ky.*

*Fuel Corp.*, 44 F.4th 393, 410 (6th Cir. 2022) (quoting *United States v. $525,695.24, Seized from JPMorgan Chase Bank Inv. Acct. #xxxxxxxx*, 869 F.3d 429, 441 (6th Cir. 2017)). The court must still "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id.* (citing 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 2688.1 (4th ed. 2022)).

## ANALYSIS

The issue presented is whether Plaintiff is entitled to a default judgment on the relief sought in the Verified Complaint. Plaintiff's main cause of action is its prayer for reformation of the deed of trust. "The judicial alteration of the provisions of a written agreement is an equitable remedy known as 'reformation.'" *Sikora v. Vanderploeg*, 212 S.W.3d 277, 287 (Tenn. Ct. App. 2006). Under Tennessee law, a court in equity may reform an instrument "when it fails to reflect the true intent of the parties." *Holiday Hosp. Franchising, Inc. v. States Res., Inc.*, 232 S.W.3d 41, 51 (Tenn. Ct. App. 2006). "The error in the instrument must have occurred because of the mutual mistake of the parties or because of one party's mistake induced by the other party's fraud." *Id.* (citing *Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995)). "A mutual mistake requires all parties to the contract or instrument to have participated in the error and labored under the same misconception." *Id.*; *see also Sikora*, 212 S.W.3d at 286 ("[C]ourts have the power to alter the terms of a written contract where, at the time it was executed, both parties were operating under a mutual mistake of fact or law regarding a basic assumption underlying the bargain."). But "[a] unilateral mistake or mere oversight by one party cannot be the subject of correction by reformation." *Holiday Hosp. Franchising*, 232 S.W.3d at 51.

Whether a contract or instrument resulted from a mutual mistake is a question of fact. *McGinnis v. Mills*, 733 S.W.2d 888, 890 (Tenn. Ct. App. 1987). The decision to grant the

6

reformation of an agreement is fact-bound and discretionary. *Vakil v. Idnani,* 748 S.W.2d 196, 199

(Tenn. Ct. App. 1987).   Reformation is only warranted if it accomplishes what was intended by

the parties without putting either party at an unfair advantage. *Id.* at 200 (citing *Blazer Fin. Servs.,*

*Inc. v. Diddle*, 648 S.W.2d 257, 259 (Tenn. Ct. App. 1983)).

     The Court holds that the Verified Complaint alleges all of the necessary factual predicates

for reformation of the deed of trust.   First, the admitted facts of the Verified Complaint show that

the Peppers took title to their property by warranty deed. Mrs. Pepper and her late husband were

granted title in real property, which was conveyed to them by warranty deed dated July 1, 2021.

Verif. Compl., ex. 2.   The warranty deed transferred title to certain real property to the Peppers as

husband and wife.   The property is generally known as 860 Oak Grove Church Road, Pocahontas,

Tennessee 38061, as shown in the records of the Hardeman County Accessor as Map-Parcel 194-

9.00, and is more fully described as follows:

> PARCEL ONE:  BEGINNING at a 14″ hickory tree, being the S.E. corner of Ray Mullins,
> runs thence with the W.B.I. of the residue of Orville Cranford's property south 693 feet to
> a stake in the N.B.L. of the Donald Glidewell property, being the S.W. corner of said
> residue; thence with the N.B.L. of said Glidewell property and an old fence N. 89 deg. 30′
> W 832 feet to a fence corner; thence N. 88 deg. W. 61 feet to a stake, being an interior
> corner of said Glidewell property; thence with the E.B.L., of said Glidewell property North
> 267 feet to a stake; thence with the S.B.L. of said Glidewell property East 250 feet to a
> stake, being an exterior corner of said Glidewell property; thence with the E.B.L. of said
> Glidewell property North 431.8 feet to a stake, being an interior corner of said Glidewell
> property; thence with a S.B.L. of said Glidewell and the S.B.L. of the Ray Mullins property
> S. 88 deg. 30′ E. 641 feet to the point of beginning, containing 11.78 acres.   The above
> description being the same used in prior deeds.
>
> INCLUDED IN THE ABOVE DESCRIPTION BUT EXCLUDED FROM THIS
> DESCRIPTION ARE THE FOLLOWING TRACTS OF REAL PROPERTY, being more
> particularly described as follows, to wit:
>
> EXCLUSION ONE:  Beginning at an iron stake in the N.B.L. of the Donald Glidewell
> property and being the S.W. corner of the residue of the Ray Mullins property, runs thence
> with said Glidewell's N.B.L. these calls (1) N. 88 degrees 30′ W. 425 ft. (2) N. 88 degrees
> W. 61 ft. to an iron pipe, being an interior corner of said Glidewell property, thence with
> an E.B.L. of said Glidewell property North 267 ft. to an iron pipe, being an interior corner

of said Glidewell property, thence with a S.B.L. of said Glidewell property East 250.3 ft. to an iron pipe, being an exterior corner of said Glidewell property, thence with an E.B.L. said Glidewell property North 431.8 ft. to an iron pipe, being an interior corner of said Glidewell property, thence with a S.B.L. of said Glidewell property S. 88 degrees 30′ E. 233.5 ft. to an iron fence post, being a S.E. corner of said Glidewell property, thence with the W.B.L. of the Residue of the Ray Mullins property south 696 ft. to the point of beginning, containing 5.27 acres.  Exclusion One being the same real property conveyed from Dennis R. Mullins and wife, Judith G. Mullins to Donald Glidewell by deed dated February 1, 1983, as found of record in Deed Book C-9, Page 487, Register's Office of Hardeman County, Tennessee.

EXCLUSION TWO:  Beginning at a stake, being the S.E. corner of Elmer Cranford property, the S.E. corner of the Charles Crocker property, the N.E. corner of the Ray Mullins property and the N.W. corner of the Orville Cranford property, runs thence S. 5 deg. 15′ E. 150 feet with Orville Cranford's W.B.L. to a stake; thence west 96 feet to a stake; thence N. 5 deg. 15′ W. 150 feet to a stake in the S.B.L. of Charles Crocker's S.B.L. thence east 96 feet with same to the point of beginning, containing 0.33 acres.  Exclusion Two being the same real property conveyed from Ray Mullins and wife, Judy Mullins to Charles Crocker dated May 17, 1982, as found of record in Deed Book W-8, Page 253, Register's Office of Hardeman County, Tennessee.

PARCEL TWO:  According to the J.H. Maloney survey of February 24, 1934:  A house lot about ⅝ [*sic*] mile North of the N.P. Rich Farm tract, lying due North and South, and East and West, being 37 2/3 poles N. and S. on both sides; 25 ½ poles E. and W. on both ends, containing 6 acres more or less.  Bounded on the North by Tom Boyd; On the East by Burt Hodum; and on the South by J.W. Hudson and on the West by L.A. Cranford. Being same property as deeded to us by N.P. Rich and recorded in Register's Office, Hardeman County, Tenn., on February 27, 1948.

Being the same property conveyed to Sean Lynn Pepper ("Mr. Pepper") and wife, Stephanie Michelle Pepper, by Warranty Deed dated July 1, 2021, of record with the Register for Hardeman County in **Deed Book 109, Page 45**, recorded on July 7, 2021 (the "Warranty Deed") [2].

---

[2] Plaintiff has noted that the value affidavit contained within the Warranty Deed is dated July 2, 2021, while the execution and authentication of execution contained within the Warranty Deed reflects a date of July 1, 2021.  Furthermore, the "Tennessee Certificate of Electronic Document" contained within the Warranty Deed reflects an execution date of July 2, 2021.  The Court finds that these discrepancies are immaterial for purposes of deciding Plaintiff's Motion for Default Judgment.

Verified Compl. ¶ 2.  The Court takes judicial notice of the warranty deed and may consider it as part of the pleadings for purposes of deciding Plaintiff's Motion for Default Judgment.  *See* Fed. R. Civ. P. 10(c).

As a matter of Tennessee law, upon execution of the warranty deed, Mr. Pepper and Mrs. Pepper held the property as a tenancy by the entirety.  A conveyance of real property to a married couple of "one and the same interest, accruing by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession" is a tenancy by the entirety, "absent language indicating a contrary intent."  *Bryant v. Bryant*, 522 S.W.3d 392, 399 (Tenn. 2017) (citing *Bennett v. Hutchens*, 179 S.W. 629, 631 (Tenn. 1915) and 2 William Blackstone, *Commentaries* 180)).  Here the warranty deed conveyed all of the grantors' fee simple interest in the property to Mr. Pepper and Mrs. Pepper and did so in the same instrument and at the same time, "TO HAVE AND TO HOLD [the property] with the appurtenances, estate, title and interest hereto belonging to the said GRANTEES, their heirs and assigns forever."  Warranty Deed 2 (ECF No. 1-2).  Based on the language of the warranty deed and the facts and circumstances surrounding the conveyance of the property described in the warranty deed, the Court concludes that the warranty deed conveyed to the Peppers an undivided interest in the property with no additional language to suggest the creation of an interest in the property other than a tenancy by the entirety.

Despite the existence of the Peppers' tenancy by the entirety, the admitted allegations of the Verified Complaint show Mr. Pepper, and Mr. Pepper alone, conveyed fee simple in the property to the trustee nominated in the deed of trust.  The deed of trust was drafted for Mr. Pepper, and not both Mr. and Mrs. Pepper, to convey the interest in the Peppers' property to a trustee.   The deed of trust secured the promissory note Mr. Pepper executed as part of the purchase of the home.

9

Mrs. Pepper acting as attorney-in-fact for her husband signed the deed of trust in his name only. Verif. Compl. ¶ 5. Nevertheless, the interest conveyed to the trustee in the deed of trust purported to be a fee simple interest. Because Mr. Pepper held the property with his wife as a tenancy by the entirety, as a matter of Tennessee law, Mr. Pepper had no separate or individual interest to convey apart from his spouse.

"Tenancy by the entirety is based on the concept that those who are married are not separate persons; rather, they 'are but one person.'" *Bryant*, 522 S.W.3d at 399 (citing *Tindell v. Tindell*, 37 S.W. 1105, 1106 (Tenn. Ct. App. 1896)). This means spouses "do not hold their interest by moieties (by parts), they hold by the entirety: 'Each is not seised of an undivided moiety, but both are . . . seised of the whole. They are seised, not *per my et per tout* [by the half and by the whole], but solely and simply *per tout* [by the whole]." *Bryant*, 522 S.W.3d at 400 (quoting *Tindell*, 37 S.W. at 1106). Perhaps most important, "a spouse in [a tenancy by the entirety] cannot sever it unilaterally by transferring a portion of the property *without the assent of the other spouse*, as doing so would destroy the survivor's right to own the whole." *Id*. at 401 (citing *Tindell*, 37 S.W. at 1106) (emphasis added).[3] Under the circumstances described in the Verified Complaint and reflected in the warranty deed and the deed of trust, Mr. Pepper had no power to convey an interest in the real property held as a tenancy by the entirety with Mrs. Pepper without her consent, either by severing his interest in the property and transferring it to the trustee, or by transferring the couple's undivided interest in the property.

---

[3] Under Tennessee common law, severance is the termination of a tenancy "by any act which is inconsistent with its continued existence, or which operates to destroy its essential unities or one or some of them." *Bryant*, 522 S.W.3d at 401 (quoting W. W. Allen, Annotation, *What Acts By One or More of Joint Tenants Will Sever or Terminate the Tenancy*, 64 A.L.R.2d 918, § 2 (1959) (footnote omitted); 20 Am. Jur. 2d *Cotenancy and Joint Ownership* § 21 (2015)).

The Verified Complaint alleges, and Mrs. Pepper has admitted by her default, that all of this occurred as the result of a mutual mistake. *McGinnis*, 733 S.W.2d at 890 (holding that mutual mistake presents a question of fact). The intent of the parties, as reflected in the covenants and warranties of the deed of trust, was the deed of trust would grant the trustee nominated in the deed a fee simple interest in the Peppers' property. *Griffis v. Davidson Cnty. Metro. Gov't*, 164 S.W.3d 267, 274 (Tenn. 2005) ("In construing a deed, a court's primary goal is to ascertain the grantor's intent from the words of the deed as a whole and from the surrounding circumstances."). But without Mrs. Pepper's consent to the transfer, Mr. Pepper had no right to convey an interest in the property he shared by tenancy in the entirety with his wife to the trustee. Mrs. Pepper's failure to give her separate consent to the deed of trust was the result of a mutual mistake, both hers as Mr. Pepper's attorney-in-fact and the original beneficiary of the deed of trust, Residential Acceptance Corporation. For its part, the lender had the note and the deed of trust prepared in a way to require Mr. Pepper only to sign the instruments as part of the closing on the transaction, even though Mr. Pepper could not legally convey an interest in the property without his wife's consent. For her part, Mrs. Pepper, as alleged in the Verified Complaint, mistakenly signed the deed of trust as her husband's attorney-in-fact, but not in her own individual capacity. Verified Compl. ¶ 19. The parties' mutual mistake clearly frustrated their intent that the deed of trust convey to the trustee a fee simple interest in the property, as provided in the deed of trust. *Id.* ¶ 5.[4] In sum, the admitted

---

[4] The precise nature of the mistake is not material. A reasonable inference from the circumstances is the Peppers borrowed purchase money from Residential Acceptance Corporation only in Mr. Pepper's name and therefore mistakenly believed that only Mr. Pepper had to sign the deed of trust. Another reasonable inference is that by signing as attorney-in-fact for her husband, Mrs. Pepper and the representative of Residential Acceptance Corporation mistakenly believed that her signature as attorney-in-fact for her husband may have signaled her own consent to the transfer. But what matters is the deed of trust as written did not accomplish what the parties intended, the transfer of an undivided fee simple interest to the trustee. *Vakil*, 748 S.W.2d at 200.

facts of the Verified Complaint show that the deed of trust as executed contained a mutual mistake. Based on the undisputed factual allegations of the Verified Complaint, the Court holds that Plaintiff is entitled to the reformation of the deed of trust to correct the mutual mistake. Therefore, the Motion for Default Judgment is **GRANTED** as to Plaintiff's prayer for reformation of the deed of trust.

This just leaves Plaintiff's prayer for a declaration about Mrs. Pepper's right to raise a cause-splitting defense in the event Plaintiff files another legal action seeking money damages against Mrs. Pepper. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that the federal courts "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). By its very nature, "a declaratory judgment action is a procedural device used to vindicate substantive rights" but is not itself a substantive claim for relief. *Int'l Ass'n of Machinists & Aerospace Workers v. T.V.A.*, 108 F.3d 658, 668 (6th Cir. 1997); *see also Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199, 134 S. Ct. 843, 187 L.Ed.2d 703 (2014) (holding that "the operation of the Declaratory Judgment Act" is "procedural" only and leaves "substantive rights unchanged"). In other words, the Act "does not create an independent cause of action" that can be invoked absent some showing of an articulated legal wrong. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007). A party's prayer for declaratory judgment "is barred to the same extent that the claim for substantive relief on which it is based would be barred." *Int'l Ass'n of Machinists & Aerospace Workers*, 108 F.3d at 668.

---

Reformation of the deed of trust will fulfill the intention of the parties without putting either party at an unfair advantage. *Id.* at 200.

Plaintiff requests a determination from the Court "that Mrs. Pepper shall not be permitted to raise cause-splitting as a defense in any subsequent action with respect to the Note and/or the Deed of Trust in the event that Q Financial, or any of its successors-in-interest, may seek damages with respect to such instruments."  Verified Compl. ¶ 34.  Generally speaking, "a plaintiff must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004) (citing Restatement of Judgments (Second) § 24 (1982)).  "The prohibition against claim splitting requires the plaintiff to present all material relevant to a claim in the first action and permits the district court to dismiss a second action grounded in that same set of facts." *Church Joint Venture, L.P. v. Blasingame*, 817 F. App'x 142, 146 (6th Cir. 2020) (citing Restatement (Second) of Judgments § 25).

The Verified Complaint seeks a declaratory judgment granting Plaintiff relief from this rule in the event Plaintiff files a second suit against Mrs. Pepper for damages arising out of her alleged default on the note.  As grounds for this claim, the Verified Complaint alleges that Plaintiff "presently is unable to ascertain any specific amount of damages which may result from any breaches of contract with respect to the Note and/or the Deed of Trust, and such amount will remain undeterminable until either the Note is satisfied or the Property is sold in satisfaction or partial satisfaction of the loan the Note memorialized." *Id.* ¶ 33.  However, Plaintiff has not alleged any substantive claim for relief, only a ruling from the Court that would preclude Mrs. Pepper from raising the rule against claim splitting as a defense in a subsequent suit.

The Court denies Plaintiff's request for a declaration about Mrs. Pepper's ability to raise a claim splitting defense in a future proceeding.  Plaintiff has not actually pleaded a cause of action on this point and is simply requesting an advisory opinion from the Court about the parties' rights in a future legal action against Mrs. Pepper.  "Federal courts cannot issue advisory opinions."

*Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs.*, 53 F.4th 1014, 1020 (6th Cir. 2022) (citing *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002)). Article III gives federal courts the authority to decide cases or controversies but not the power to render "judgments on theoretical disputes that may or may not materialize." *Safety Specialty*, 53 F.4g at 1020 (citing *Saginaw County v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020)). Plaintiff essentially seeks a preemptive ruling on a possible affirmative defense, one which Mrs. Pepper may or may not raise, in a future proceeding against Mrs. Pepper, which Plaintiff may or may not file. The Verified Complaint alleges no facts to justify a ruling of the kind Plaintiff seeks. Therefore, this request for relief will be denied.

## CONCLUSION

The Court hereby grants Plaintiff a Default Judgment on the following terms as requested in Plaintiff's Motion for Default Judgment.

First, that upon recordation of this Default Judgment with the Register for Hardeman County, Tennessee, the *lis pendens* shall be released.

Next, that the Court hereby enters an equitable judgment and accordingly reforms the Deed of Trust to the end that Mrs. Pepper is made a Co-Grantor of the same, as though she had signed the Deed of Trust in her individual capacity on the same day that she signed it in her fiduciary capacity as attorney-in-fact for Mr. Pepper, and that the Deed of Trust therefore bind and be enforceable against Mrs. Pepper's title to the Property, to the end that a trustee, or successor trustee, acting on behalf of Plaintiff, or its successor-in-interest may, upon default with respect to the loan instruments described herein and in the Complaint, conduct a non-judicial foreclosure with respect to the Property, and shall thereby convey good and marketable title to the Property, free and clear of any claim, right, title, and/or interest that Mrs. Pepper may claim in the Property.

14

**IT IS SO ORDERED.**

> **s/ S. Thomas Anderson**
> S. THOMAS ANDERSON
> UNITED STATES DISTRICT JUDGE
>
> Date:  October 10, 2023.